**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LAMONTE F. WILLIAMS,                          :
      Plaintiff,                            :     No. 20-cv-3202-JMY
                                 :
      v.                                    :
                                 :
PIEDMONT AIRLINES, et al.,                     :
      Defendants.                           :

**MEMORANDUM**

**Younge, J.**                                                                    **April 8, 2022**

Currently before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) filed by the Defendants, Claudia Sales and Glenda Rivera.  (Motion to

Dismiss, ECF No. 11.)  The Court finds this matter appropriate for resolution without oral

argument.  See Fed. R. Civ. P. 78; L.R.  7.1(f).  For the reasons set forth below, the Court will

grant the Defendants' Motion, and *sua sponte* dismiss the remaining claims against all

Defendants.

**I.**      **PROCEDURAL AND FACTUAL BACKGROUND:**

**A.**      **Procedural History:**

*Pro se* Plaintiff filed an inartfully drafted Complaint on June 28, 2020.  (Complaint, ECF

No. 2.)  In his Complaint, he alleges that federal jurisdiction is appropriate based on the fact that

he is proceeding under the Railway Labor Act.  (*Id.* page 2.)  In additional to his claims under the

Railway Labor Act, Plaintiff also appears to assert an employment discrimination claim on

behalf of Kyesha Vann, and a claim for violation of the Health Insurance Portability and

Accountability Act of 1996 (HIPAA) on behalf of Stephanie Felder and Whitney Shanygne

Hagerman.  (*Id.* page 6.)  Although the Complaint is cryptic, it can be inferred that Stephanie

Felder, Whitney Shanygne Hagerman, and Kyesha Vann were Plaintiff's coworkers and fellow union members at Piedmont Airlines. (*Id.* page 6.)

Eight Defendants are named in the Complaint as follows; Piedmont Airlines, the Communication Workers of America (CWA) Local 13301, Pam Tronser, Gwen Ivey, Robert Hersh, Jose Rivera, Glenda Rivera, Claudio Sales. (*Id.* page 1-3.) Although it is not specifically pled, it is possible to infer from reading the Complaint as a whole, that these individual Defendants are or were employees of Piedmont Airlines and/or union members in the CWA. (See generally Complaint.)

A review of the docket indicates that moving Defendants, Claudia Sales and Glenda Rivera, were served with the Complaint on February 10, 2021. (Proof of Service, ECF No. 8.) The docket also indicates that Robert Hersh was served with the Complaint on December 3, 2021. (Proof of Service, ECF No. 18.) To date, Robert Hersh has failed to file a responsive pleading while the remaining Defendants have not been served with the Complaint. However, the logic and legal reasoning applied by the Court in granting Defendant's Motion to Dismiss will be applied to all claims asserted against all named Defendants in this matter.

**B.    Factual Background:**

Plaintiff claims that he is an employee for Piedmont Airlines in Philadelphia, Pennsylvania and serves as a shop steward for the Communications Workers of America (CWA), Local Union 13301. (Complaint page 4.) Plaintiff alleges that he filed grievances on behalf of Brandon Williams, Robert Hall, Veronica Tabron, Jamal Thompson, and Shaquille Henry. (Complaint page 4.) He also alleges he attempted to file a grievance for Asiah Walker, but Tameka Norman, a shop steward, prohibited him from doing so because the union grievance process does not cover violations of the travel policy. (*Id.*) Plaintiff then claims that he filed

"grievances for the aforementioned employees in protest due to the fact that they would not receive system board hearings." (*Id.* page 4.)  Plaintiff claims he "was not allowed to represent the aforementioned [sic] employees during their grievance process[es]." (*Id.* page 5.)  Mr. Williams characterizes this as a "blatant violation of the collective bargaining agreement." (*Id.* page 5.)

Plaintiff alleges that Claudia Sales, Glenda Rivera, and Piedmont violated the Collective Bargaining Agreement because they "have refused to disclose the identity of the third party" that administers employee medical absences and leave requests. (Complaint page 6.)  He also alleges they violated the Collective Bargaining Agreement because they terminated Stephanie Felder and Whitney Shanygne Hagerman for fictitious doctors' notes without "allowing either union member to choose the shop steward of choice for representation during the grievance process." (Complaint page 6.)  Plaintiff appears to be asserting a claim for violation of HIPPA on behalf of Stephanie Felder and Whitney Shanygne Hagerman based on Defendants' purported act of obtaining their private medical records. (*Id.* page 6.)

Additionally, Plaintiff claims Piedmont and Claudia Sales "discriminated" against Kyesha Vann because they denied her request for leave after the death of her nephew and did not allow her to choose the union representative of her choice during the grievance process. (Complaint page 7.)  Plaintiff asserts that union members are afraid to choose a shop steward other than Robert Hersh or a designated shop steward, fearing they would lose their system board hearing, as a form of retaliation by Piedmont and the CWA. (*Id.* page 8.)  He claims Piedmont and the CWA told an unidentified shop steward she could not speak to Plaintiff and that system board members attempted to reverse a hearing board decision that was rendered in his favor. (*Id.*

3

page 9.)  According to Plaintiff, this was in retaliation for filing grievances and attempting to

represent employees during their system board hearings.  (*Id.* page 9.)

 Plaintiff concludes by making a request for relief as follows:

> Due to the fact that the aforementioned employees failed to receive a fair and
> unbiased system board hearing.  I asked the Eastern District of Pennsylvania
> Federal Court to render the termination of all the aforementioned employees null
> & void.  I also ask the Court to reinstate the aforementioned employees with back
> pay & punitive damages in the amount of 3x of all retro pay for each individual
> employee [who] failed to receive an unbiased and impartial system board hearing.
> I also ask the Court to reinstate all union members [who] were terminated by a
> partial and biased system board which forced those union members to accept Robert
> Hersh or other designated union members as their union representatives during their
> grievance process.

(*Id.* page 10 (V. Relief).)

## II. LEGAL STANDARD:

 In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of

the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party.

*Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  The facts alleged must be

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint will survive a

motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible

claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION:

 Plaintiff is not authorized to appear in federal district court and represent the third parties

who he identifies in the Complaint because he is not an attorney.  Furthermore, Plaintiff fails to

clearly plead facts to establish that he suffered an injury and, more importantly, he fails to

request relief on his own behalf.  Therefore, Plaintiff lacks standing to assert claims on behalf of

the third parties whom he identifies as suffering injury.  Plaintiff also failed to effectuate service

of process against Piedmont Airlines, the Communication Workers of America (CWA) Local 13301, Pam Tronser, Gwen Ivey and Jose Rivera.  Therefore, his claims will be dismissed.

Before dispensing with the specific claims asserted by Plaintiff, a brief discussion of the Railway Labor Act is helpful in understanding the issues presented in this action.  The Railway Labor Act was enacted to avoid any interruption to commerce or to the operation of any carrier engaged therein and to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions in the railroad industry.  45 U.S.C. § 151a.  In *Hawaiian Airlines v. Norris*, 512 U.S. 246, 252-253 (June 20, 1994), the Supreme Court discussed Congressional intent when enacting the Railway Labor Act and wrote:

> Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes.  To realize this goal, the Act established a mandatory arbitral mechanism for "the prompt and orderly settlement" of two classes of disputes.  The first class, those concerning "rates of pay, rules or working conditions," are deemed "major" disputes. Major disputes relate to "'the formation of collective bargaining agreements or efforts to secure them.'"  The second class of disputes, known as "minor" disputes, "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."  Minor disputes "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Thus, "major disputes seek to create contractual rights, minor disputes to enforce them."

*Id.* (citation omitted).

To further the Act's purpose, Congress required that railway companies and their related labor unions create a private system for resolving grievances and for the arbitration of labor disputes without judicial intervention from the court.  45 U.S.C. § 152; *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 724-726 (1945).  Prior to exhausting statutory remedies, the Railway Labor Act limits the ability of labor unions to resort to self-help in the form of labor slowdowns,

labor strikes or the formation of picket lines.  *Burlington Northern R.R. Co. v. Bhd. of Maintenance of Way Employees*, 481 U.S. 429, 444-446 (1987).

In 1936, the Railway Labor Act was made applicable to the airline industry.  45 U.S.C. § 181.  The Railway Labor Act requires that the parties to a collective bargaining agreement in the airlines industry establish a board of adjustments to resolve disputes through a grievance and arbitration system.  45 U.S.C. § 153.  The role of the federal courts in resolving disputes under the scheme created by the Railway Labor Act is limited.  *SEPTA v. Bhd. of R.R. Signalmen*, 882 F.2d 778, 790 (3d Cir. 1989).   Under the Railway Labor Act, there is a distinction between major and minor disputes.[1]  Once a collective bargaining agreement is established, minor labor disputes are generally resolved through a private grievance and arbitration system, and federal courts lack subject matter jurisdiction to decide these minor disputes unless certain exceptions apply.  *Bhd. of R.R. Signalmen v. Burlington Northern R.R. Co.*, 829 F.2d 617, 619-620 (7th Cir. 1987); *Sisco v. Consolidated Rail Corp.*, 732 F.2d 1188, 1190 (3d Cir. 1984).

A.      **Plaintiff Does Not Have a License to Practice Law, and He Lacks Standing to Pursue Claims on Behalf of Third Parties Identified in the Complaint:**

In their Motion to Dismiss, Defendants argue that Plaintiff lacks standing to bring suit on behalf of the third parties identified in the Complaint.  In response to Defendants' motion to dismiss, Plaintiff fails to cite to any provision in the Railway Labor Act to nullify the general requirement that he establish standing to bring suit.  (Argument Not to Dismiss, ECF No. 12; Response in Opposition, ECF No. 15.)  The Court is equally unaware of any provision in the Railway Labor Act that supersedes the requirement of standing.

The United States Constitution limits federal judicial power to cases and controversy.  U.S. Const. Art II § 2.  Federal courts enforce the case or controversy requirement, in part, through the doctrine of standing.  A dispute is not a case or controversy unless the moving party

has standing, meaning he or she has (1) suffered an injury-in-fact; (2) that is fairly traceable to defendant's challenged actions; and (3) that is likely redressable by a favorable decision. *Lujan v. Defenders Wildlife*, 504 U.S. 555, 560-561 (1992).  To show an injury in fact, the plaintiff must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized … and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560.

"It is a well-established tenant of standing that a litigant must assert his or her own legal rights and interest, and cannot rest a claim to relief on the legal rights or interest of third parties." *Pa. Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278, 288 (3d Cir 2002) (citing *Powers v. Ohio*, 499 U.S. 400, 410 (1991).  Federal courts do, however, recognize third party standing if the plaintiff establishes: (1) the plaintiff suffered an injury; (2) the plaintiff and the third party have a close relationship; and (3) the third party faces obstacles that prevent it from pursuing its own claims.  *Id.* at 288-289.

Plaintiff does not assert claims on his own behalf; instead, Plaintiff alleges that he was a shop steward for the CWA when he filed grievances on behalf of Brandon Williams, Robert Hall, Veronica Tabron, Jamal Thompson, and Shaquille Henry.  He also alleges that he attempted to file a grievance on behalf of Asiah Walker, and he further identifies Stephanie Felder, Whitney Shanygne Hagerman, and Kyesha Vann as individuals whose rights he is seeking to protect.  In contrast to his claim brought under the Railway Labor Act, it would appear, that Plaintiff is attempting to assert a discrimination claim on behalf of Kyesha Vann and a claim for violation of HIPAA on behalf of Stephanie Felder and Whitney Shanygne Hagerman.

Plaintiff is not an attorney; therefore, he cannot be permitted to represent these individuals in federal district court.  *Schneller v. Fox Subacute*, 317 F. App'x. 135, n.1 (3d Cir. 2008) (stating that plaintiff who purported to represent third parties when filing his 42 U.S.C. §

1983 suit, could not represent third parties because he was a non-lawyer who was proceeding *pro se*; therefore, third parties would need to represent themselves or retain counsel); *Parks v. Twp. of Portage*, 385 F. App'x. 118, 121 (3d Cir. 2010) (district court properly dismissed siblings from lawsuit filed by their brother against the township because siblings had not retained counsel or elected to proceed *pro se*, and their brother who was not an attorney was not authorized to represent them in federal district court); *Badger v. Stryden, Inc.*, 543 F. App'x. 156, 160 (3d Cir. 2013) (a non-lawyer plaintiff proceeding *pro se* could not speak on behalf of co-plaintiffs because a plaintiff can only proceed in federal court in their own right or represented by counsel); *A.H. v. S. Orange Maplewood Bd. of Educ.*, 153 F. App'x. 863, 864 (3d Cir. 2005) (non-lawyer consultant who represented parent and child in state due process hearing could not filed a complaint in federal district court on behalf of parent and child seeking fees because consultant was not an attorney). Plaintiff's lack of a license to practice law is compounded by the fact that he provides no affidavits or evidence to suggest that the individuals he purportedly represents in this action actually consented to have their rights adjudicated in this proceeding.

Plaintiff claims that he filed grievances on behalf of individuals identified in the Complaint but was not allowed to represent them during the grievance process under the Railway Labor Act. From a plain reading of the allegations in the Complaint, the Court can conclude that these third parties were in fact permitted to file grievances and that they received grievance hearings as provided for by the Railway Labor Act. Nothing in the Railway Labor Act prevents an employee from bringing an arbitration on his or her own behalf, without the support of a union. 45 U.S.C. § 153 First (j); *Miklavic v. USAir*, 21 F.3d 551, 555 (3d Cir. April 14, 1994). There is equally nothing to suggest that third parties are unable to file a lawsuit on their own behalf if they so desire.

For these reasons, the Court will dismiss all claims on behalf of third parties without leave to amend.  When a motion to dismiss is granted, the court must decide whether to grant leave to amend.  The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990).  However, a court need not grant leave to amend when it would be an exercise in futility.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*., 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

**B.  Plaintiff Asserts No Viable Claim on his Own Behalf; Therefore, His Complaint will be Dismissed:**

In the Complaint, Plaintiff does not seek relief on his own behalf.  He avers that he was prevented from representing fellow CWA members and employees during their system board hearings.  (Complaint page 9.)  In response to Defendants' Motion to Dismiss, Plaintiff alleges that he was harassed at his workstation for filing grievances and pursuing claims on behalf of employees in violation of CWA policy.  (Argument Not to Dismiss, page 2.)  He further makes reference to an attempt to reverse a decision that was rendered in his favor.  (Complaint page 9.)  However, Plaintiff fails to identify an injury that he suffered in relationship to these claims, and he fails to request relief in his own right.

A plain reading of the request for relief in the Complaint illustrates that Plaintiff seeks reinstatement and back pay for employees who were terminated.  This request for relief is clearly

inapplicable to himself because at the time he filed his Complaint he avers that he was still

employed by Piedmont Airlines and was acting as a shop steward.  (Complaint page 4.)

Therefore, he would not be eligible for reinstatement or back pay.  Plaintiff will not be granted

leave to amend.

**C.     Claims Against Defendants Who Have Not Been Served with Summons and
        Complaint Will Be Dismissed for Lack of Prosecution:**

Plaintiff's failure to prosecute this action provides separate grounds for dismissal without

prejudice as to claims against Defendants who have not been served with Summons and

Complaint as required by Federal Rule of Civil Procedure 4(m).  The decision to dismiss for lack

of prosecution lies within the discretion of the district court.  *Emerson v. Thiel College*, 296 F.3d

184, 190 (3d Cir. 2002) (dismissal for failure to prosecute is reviewed for abuse of discretion).

Dismissal under these circumstances is in accordance with Federal Rule of Civil

Procedure 4(m) which provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—
> on motion or on its own after notice to the plaintiff—must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time. But if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

The Rule requires a court to extend time for service if good cause is shown and, absent a

showing of good cause, permits a court to dismiss the case without prejudice or require that

service must be made by a specific point in time.  *Petrucelli v. Bohringer & Ratzinger, GMBH

Ltd.*, 46 F.3d 1298, 1305-07 (3d Cir. 1995); *see also Boley v. Kaymark*, 123 F.3d 756, 758 (3d

Cir. 1997).  In *Petrucelli*, the Third Circuit held that the analysis under Rule 4(m) involves a

two-part process.  *Petrucelli*, 46 F.3d at 1305. "First, the district courts should determine whether

good cause exists for an extension of time.  If good cause is present, the district court must

extend time for service and the inquiry is ended.  If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service."  *Id.; see also Dieffenbach v. Dep't of Revenue*, 490 F. App'x 433, 436 (3d Cir. 2012) ("[T]he District Court did not abuse its discretion in dismissing defendant Leach pursuant to Rule 4(m)."); *Becker v. Susquehana Twp. Police*, 254 F. App'x 149, 154 (3d Cir. 2007); *Aruanno v. Corsine*, 413 F. App'x 494, 497 (3d Cir.  2011).

Plaintiff has failed to show good cause for delay in effectuating service of process in accordance with the timeliness requirements of Rule 4(m).  On July 14, 2020, the Court granted Plaintiff's motion to proceed *In Forma Pauperis* with direction that he should complete the USM-285 Forms.  (ECF No. 4 ¶ 4.)  On October 28, 2020, the Marshals Service filed a Status Report on Request for USM-285 Forms which indicates that Plaintiff failed to return two of the requested USM-285 Forms.  (ECF No. 5.)  The docket also indicates that the Marshals Service returned as unexecuted the USM-285 Forms that were completed for Robert Hersh, Jose Rivera, Pam Tronser, and Gwen Ivey.  (ECF Nos. 6-7.)  The Court's Order that granted Plaintiff *In Forma Pauperis* status specifically states, "In the event a summons is returned unexecuted, it is [Plaintiff's] responsibility to ask the Clerk of Court to issue an alias summons and to provide the Clerk with the Defendant's correct address, so service can be made."  However, Plaintiff took no steps to ensure that service of process was completed until after the Court issued a Letter pursuant to Rule 4(m) on October 18, 2021.  (ECF No. 16.)

On March 13, 2022, over four months after the Court entered its 4(m) Letter, Plaintiff filed a Motion for Default Judgment.  (Motion for Default Judgment, ECF No. March 13, 2022.) In his Moton for Default Judgment, Plaintiff blames the Marshals Service for failure to make timely service of process.  (*Id.* page 2.)  He alleges that on November 30, 2021, he completed a

USM-285 Form for Jose Rivera, but has heard nothing about the status of service on Jose Rivera. (*Id.* page 1.)  A review of the docket also indicates that Plaintiff submitted renewed USM-285 Forms to the Marshals Service on November 12, 2021 for Defendants Gwen Ivey and Robert Hersh.  (ECF Nos. 17-18.)  On December 1, 2021, the Form for Gwen Ivey was returned as unexecuted while the return service for Robert Hersh indicates that he was served with process on December 3, 2021.[2]  (*Id.*)  To date, Plaintiff has taken no further steps to effectuate service of process, and he has failed to explain his reason for delay.  (See Docket Generally.)  For example, the USM-285 Forms for Jose Rivera, Pam Tronser, and Gwen Ivey were originally returned unexecuted between November 30, 2020 and February 8, 2021.  (ECF Nos. 6-7.)  Plaintiff fails to explain why he waited more than a year to alert the Court to an issue with service of process— and only then by way of filing a Motion for Default Judgment.

Plaintiff has failed to show good cause for delay in effectuating service of process, and he is not absolved from responsibility simply because he is proceeding *pro se* and was granted *in forma pauperis* status.  *Tagliamonte v. Wang*, 496 Fed. Appx. 208, 211 (3d Cir. 2012) ("As we have recognized, however, an indigent plaintiff is not entirely without responsibility, as he must 'attempt to remedy any apparent service defects' that he is made aware of.").  Therefore, his claim against those Defendants who have not been served with process will be dismissed without prejudice.

**IV.    CONCLUSION:**

For these reasons, Defendants' motion to dismiss will be granted and all allegations in the

Complaint against all Defendants will be Dismissed.


BY THE COURT:

    /s/ John Milton Younge
Judge John Milton Younge

---

[1]  Major disputes concern the formation and modification of the collective bargaining agreement itself and relate:

> to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy.  They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

*Association of Flight Attendants, AFL-CIO v. USAir, Inc.,* 960 F.2d 345, 348 (3d Cir. March 31, 1992).

A minor dispute is "a dispute arising or growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" and contemplate an existing agreement.  *Consolidated Rail Corp v. Railway Labor*, 491 U.S. 299, 303 (1989).  The two types of disputes are distinguished as follows:

> Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement.   Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major.

*Id.* at 307.

[2]  The Court is of the belief that it can dismiss claims against Robert Hersh despite the fact that he was served with process, and, thereafter, failed to enter an appearance.  As discussed hereinabove in Section A, Plaintiff's lack of standing to assert claims would be equally applicable to claims asserted against Robert Hersh as it is applicable to all Defendants named in the Complaint.